COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges McCullough, Huff and Senior Judge Haley
Argued at Chesapeake, Virginia


JOSEPH ALTIRO TURNER

OPINION BY
v.      Record No. 0352-13-1                    JUDGE GLEN A. HUFF
MAY 20, 2014

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
John C. Morrison, Jr., Judge Designate

Caswell W. Richardson, Assistant Public Defender (Office of the
Public Defender, on brief), for appellant.

Robert H. Anderson, III, Senior Assistant Attorney General
(Mark R. Herring, Attorney General, on brief), for appellee.


Joseph A. Turner ("appellant") appeals his convictions of three counts of aggravated

sexual battery, in violation of Code § 18.2-67.3(A)(1).  Following a bench trial in the Circuit

Court of the City of Norfolk ("trial court"), appellant was sentenced to thirty years'

imprisonment in the Department of Corrections with seventeen years suspended.  Appellant

presents two assignments of error on appeal.  First, appellant contends the trial court erred in

allowing C.M. (the child victim) to write certain portions of her testimony, rather than speaking

it, as this violated appellant's Sixth Amendment right to confront his accuser.  Second, appellant

contends the trial court lacked the authority to allow C.M. to write her testimony, as the General

Assembly specifically provided that this situation be addressed in a different manner when it

enacted Code § 18.2-67.9.  For the following reasons, this Court affirms the judgment of the trial

court.

## I. BACKGROUND

On appeal, "'we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial.'" Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (*en banc*) (quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)). So viewed, the evidence is as follows.

In February 2011, appellant began living with his girlfriend and her ten-year-old daughter, ("C.M."). In December 2011, C.M. informed her mother that appellant had sexually abused her, causing the mother to end her relationship with appellant and tell appellant that he was no longer welcome to live in her house.

On July 18, 2012, appellant was indicted on three counts of forcible sodomy, in violation of Code § 18.2-67.1, and three counts of aggravated sexual battery, in violation of Code § 18.2-67.3(A)(1). Prior to appellant's trial, the Commonwealth filed a motion *in limine* seeking to allow C.M. to write portions of her testimony. The motion alleged that on three separate occasions during appellant's preliminary hearing, C.M. had been unable to respond orally to questions propounded by counsel and, consequently, was allowed to respond in writing.

At the hearing on the motion *in limine*, the Commonwealth presented the testimony of Erinn Portnoy ("Portnoy"), a licensed clinical social worker, whom the trial court received as an expert witness in the field of child psychology, specializing in victims of child abuse, sexual abuse, and physical abuse. Portnoy testified that she had conducted a forensic evaluation of C.M. and found that C.M. "had a great deal of trouble verbalizing the allegations" against appellant. Portnoy testified that C.M. could talk about the allegations in "general terms, but when it came to specific [sic], she needed to write them down." Specifically, Portnoy described C.M. as "very avoidant when talking about the allegations. She would put her head down on the

table. She was having a lot of difficulty. She just shut down almost completely. Very teary, she didn't want to talk about what happened." Based on her evaluation, Portnoy diagnosed C.M. with post-traumatic stress disorder, and concluded that, even if C.M. testified through closed-circuit television, she would still need to "write down" parts of her testimony "due to her trauma and her avoidance symptoms."

At the conclusion of the hearing, the trial court granted the Commonwealth's motion, but conditioned its order on the requirement that the Commonwealth attempt to elicit an oral response from C.M. before she would be allowed to respond in writing. The trial court further ruled that "[i]f and when [C.M.] elects to write an answer down, the Commonwealth can take the answer and read it to her and say, 'Is this your answer to the question?'" The trial court concluded that this procedure would provide "sufficient opportunity for . . . appellant to observe [C.M.'s] demeanor. If she's making it up or lying, then there will be plenty of opportunity for somebody to evaluate that, but I don't find that [appellant's Sixth Amendment] rights are going to be compromised."

At trial, C.M. was initially questioned regarding her competency as a witness, and the trial court ruled that she was competent to testify. C.M. then testified that appellant had touched her six times in a way she did not like, including three times at her home in Norfolk. Regarding the first incident in Norfolk, C.M. testified that it occurred when she was sleeping in her bed "before Christmas." The Commonwealth then asked C.M. to "tell the judge what happened," but C.M. was unable to do so. Consequently, the trial court allowed C.M. to respond to the Commonwealth's question in writing. The trial court then accepted C.M.'s written response into evidence and read it aloud: "I was in my room asleep and [appellant] came into my room and he pulled my pants down and got on top of me."

C.M. then indicated she could not say aloud what happened after appellant got on top of her, but she indicated that she could use anatomically correct pictures of a female and male to describe it. C.M. first circled the penis of the anatomically correct male photo labeled "1," and the buttocks on the female photo labeled "4." C.M. then wrote that "[appellant] put 1 into my 4." The trial court read C.M.'s written response aloud and accepted it into evidence. C.M. then stated that during this first incident, she was lying on her stomach.

C.M. subsequently testified that the second incident occurred one night in November after she fell asleep watching television in her mother's room. C.M. testified that on that night, appellant was the only other person home with her. After again being unable to verbalize the details of what happened, C.M. wrote: "He came into my room and pulled down my pants and put his 1 in my 4." The trial court then asked C.M. if she meant the same "1" and the same "4" as she had previously circled in the pictures, and C.M. orally responded, "Yes."

C.M. then testified that the third incident happened in her bedroom after she fell asleep. When asked to describe what happened on the third occasion, C.M. orally replied, "[t]he same thing as always," which she later clarified as being the same thing that happened in the first two incidents. Subsequently, the Commonwealth referred to C.M.'s written note that appellant had put his "1" in her "4" and asked how that felt. C.M. responded, in writing, that it "[h]urt" "[m]y 4." C.M. then orally testified that the first person she told about any of the incidents was her mother and that she had done so before Christmas in 2011.

In an extensive cross-examination, C.M. testified about previous statements she had made to both a Norfolk police detective and Portnoy, what she did as appellant was on top of her during each of the three incidents, and what finally caused her to tell her mom about the incidents. Further, during this cross-examination, C.M. orally expanded upon her written testimony. Specifically, C.M. testified that she knew it was appellant's "number one" because

she had seen something about it in a movie and that she "know[s] more things that an 11-year-old shouldn't."

At the close of the Commonwealth's evidence, the trial court granted appellant's motion to strike the three forcible sodomy charges for lack of sufficient proof of penetration, but denied appellant's motion to strike the three aggravated sexual battery charges. In so ruling, the trial court stated that "this young lady was under a lot of stress, obviously, and she did reasonably well under all of those circumstances." At the close of appellant's evidence, the trial court convicted appellant on three counts of aggravated sexual battery. This appeal followed.

## II. ANALYSIS

### A. Sixth Amendment

On appeal, appellant first contends that the trial court's decision to allow C.M. to write portions of her testimony violated his rights under the Confrontation Clause of the Sixth Amendment. Specifically, appellant argues he was denied his right to observe C.M.'s demeanor as she was writing portions of her testimony, which were crucial to the Commonwealth's case.

"On appeal, constitutional arguments present questions of law that this Court reviews de novo." Crawford v. Commonwealth, 281 Va. 84, 97, 704 S.E.2d 107, 115 (2011) (citing Shivaee v. Commonwealth, 270 Va. 112, 119, 613 S.E.2d 570, 574 (2005)).

"The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides: 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" Maryland v. Craig, 497 U.S. 836, 844 (1990). Under the Confrontation Clause, a criminal defendant has several rights regarding adverse witness testimony from a child, including that the "witness must be competent to testify and must testify under oath; the defendant retains full opportunity for contemporaneous cross-examination; and the judge, jury, and defendant are able to view . . . *the demeanor (and*

*body) of the witness as he or she testifies*." Id. at 851; see also Johnson v. Commonwealth, 40 Va. App. 605, 615, 580 S.E.2d 486, 491 (2003) (emphasis added). Additionally, "the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." Coy v. Iowa, 487 U.S. 1012, 1016 (1988).

"'[T]he Confrontation Clause . . . ensure[s] the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.'" Dearing v. Commonwealth, 259 Va. 117, 123, 524 S.E.2d 121, 124 (2000) (quoting Craig, 497 U.S. at 845). Or, in other words, "[the Confrontation Clause] may be said to cause trauma for the very purpose of eliciting truth." Craig, 497 U.S. at 856.

In the present case, appellant argues that he was afforded every right guaranteed by the Confrontation Clause except for the right to view C.M.'s demeanor as she wrote portions of her testimony. Appellant's argument, however, presents none of the perils from which the Confrontation Clause protects defendants in criminal proceedings. Rather,

> the primary objective of the [Confrontation Clause] . . . [is] to prevent depositions or ex parte affidavits . . . being used against [a defendant] in lieu of personal examination and cross-examination of the witness . . . compelling [the witness] to stand face to face with the jury in order that they may look upon him, and *judge by his demeanor . . . and the manner in which he gives his testimony whether he is worthy of belief*.

Mattox v. United States, 156 U.S. 237, 242-43 (1972) (emphasis added). The record in the present case demonstrates that appellant, his counsel, and the trial judge retained an uninhibited view of C.M. throughout her testimony, including the written portions, as required by the Confrontation Clause. Moreover, appellant had a full opportunity to cross-examine C.M. and bring attention to "the manner" of C.M.'s testimony, thereby allowing the trial court, sitting as the trier of fact, to determine whether it was "worthy of belief." See id.

While this is a case of first impression in Virginia, the Vermont Supreme Court addressed a similar question in State v. Brink, 949 A.2d 1069, 1071-72 (Vt. 2008), and determined that the defendant's rights under the Confrontation Clause of the Sixth Amendment were not violated when a child witness, who was the victim of sexual abuse, was allowed to write portions of her testimony. In Brink, the child was allowed to provide a written response to the prosecutor's question "about which part of defendant's body was touching her when she awoke to find defendant on top of her." Id. at 1071. When the child was unable to read to the jury what she had written, "the [trial] court further permitted the state's attorney to ask her: 'Ryan's penis was in my vulva, is that what you wrote, yes or no?'" Id. The child responded, "'Yes.'" Id.

In holding that the child's written testimony did not violate the defendant's right to observe the child's demeanor, the Vermont Supreme Court emphasized that the defendant retained an uninhibited view of the child throughout her oral and written testimony. Id. at 1072-73. The court also noted that the "defendant retained a full opportunity for contemporaneous cross-examination of [the child]," which allowed the defendant an opportunity to explore the child's reluctance to provide an oral response. Id. at 1072.

Similarly, in the present case, C.M. provided her testimony, including her written allegations, in full view and awareness of appellant, his counsel, and the trial court. Further, appellant had a full opportunity to explore C.M.'s written testimony on cross-examination. Accordingly, appellant was afforded his right to observe C.M.'s demeanor while testifying. If anything, "the manner" of C.M.'s testimony goes to its weight, not its admissibility under the Confrontation Clause. See Mattox, 156 U.S. at 242-43. Nevertheless, appellant argues his Sixth Amendment rights were infringed because he was unable to view C.M.'s demeanor when she was writing as effectively as he would have been able to if she orally testified.

This argument presents a similar issue as was addressed by the United States Supreme Court in <u>Delaware v. Fensterer</u>, 474 U.S. 15 (1985). In that case, the defendant argued he was denied his right to cross-examination because an expert witness testified on direct examination regarding his opinion of the case, but upon cross-examination, was unable to recall the basis for his opinion. <u>Id.</u> at 16-17. In holding that the defendant's rights under the Sixth Amendment had not been infringed, the United States Supreme Court stated that the "Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." <u>Id.</u> at 20. The Court further noted that the

> Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion. To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony.

<u>Id.</u> at 21-22.

Similarly, while the Confrontation Clause guarantees a right to observe an adverse witness' demeanor while she is testifying, it does not guarantee the right to observe an adverse witness' demeanor in whatever way, and to whatever extent, a defendant prefers. Rather, it is the trial court, not appellant, that has discretion in determining "the mode . . . of interrogating witnesses and presenting evidence . . . so as to . . . protect witnesses from harassment or undue embarrassment." Rule 2:611(a). It is enough that, in the present case, appellant retained an uninhibited view of C.M. throughout her entire testimony, and was then afforded the opportunity to cross-examine C.M., and thereby call attention to the manner of her testimony as a reason for giving it "scant weight." <u>See</u> <u>Fensterer</u>, 474 U.S. at 21-22.

Accordingly, this Court holds that the trial court's decision to allow C.M. to write portions of her testimony did not infringe upon appellant's rights under the Confrontation Clause.

### B. Code § 18.2-67.9

Appellant next argues that the trial court erred by not following the procedure outlined in Code § 18.2-67.9 when it allowed C.M. to write portions of her testimony. Code § 18.2-67.9 provides, in relevant part, as follows:

> A. The provisions of this section shall apply to an alleged victim who was fourteen years of age or under at the time of the alleged offense and is sixteen or under at the time of the trial and to a witness who is fourteen years of age or under at the time of the trial.
>
> In any criminal proceeding, including preliminary hearings, involving an alleged offense against a child, . . . the attorney for the Commonwealth or the defendant *may apply* for an order from the court that the testimony of the alleged victim or a child witness be taken in a room outside the courtroom and be televised by two-way closed-circuit television . . . .
>
> B. The court *may order* that the testimony of the child be taken by closed-circuit television as provided in subsection A *if it finds that the child is unavailable to testify in open court* . . . .

(Emphasis added). Citing to the interpretive principle of *expression unius est exclusion alterius*, appellant argues that the General Assembly's allowance for closed-circuit testimony through Code § 18.2-67.9 suggests that written testimony by an alleged child victim was not intended to be used, or at least that closed-circuit television was meant to be attempted first.

This argument fails, however, because Code § 18.2-67.9 is inapplicable to the present case. Pursuant to Code § 18.2-67.9, a court may order a child's testimony be done through closed-circuit television "if it finds that the child is unavailable to testify in open court." In the present case, the trial court made no such finding. In fact, C.M. was available and did testify in open court. Moreover, even if C.M. was unavailable to testify, nothing in the plain language of

the statute *requires* its application.  Rather, Code § 18.2-67.9 provides that the trial court "may" grant such an order if the statute's requirements are met.  See Small v. Fannie Mae, 286 Va. 119, 135, 747 S.E.2d 817, 826 (2013) ("where the General Assembly uses 'may' it grants discretionary authority").

Appellant attempts to circumvent this plain language by invoking the construction principle of *expression unius est exclusion alterius*.  This interpretive principle, which is nonbinding, applies when a group of listed terms implies that omitted terms were not meant to be expressed; in other words, one can infer that an item not listed was intentionally omitted.  See Conkling v. Commonwealth, 45 Va. App. 518, 522-23, 612 S.E.2d 235, 237-38 (2005).  This interpretive principle does not apply in the present case, however, because the threshold requirement of Code § 18.2-67.9's applicability – that the witness be unable to testify in open court – was not met.  Furthermore, to accept appellant's argument would mean that the General Assembly intended every manner of child testimony to be explicitly delineated in a statute.

Therefore, this Court rejects appellant's argument that Code § 18.2-67.9 is applicable to the present case.  Instead, this Court holds that the trial court was within its discretion in allowing C.M. to write certain portions of her testimony.  See Rule 2:611(a) (The trial court has discretion in determining "the mode . . . of interrogating witnesses and presenting evidence . . . so as to . . . protect witnesses from harassment or undue embarrassment.").

## III.  CONCLUSION

For the foregoing reasons, this Court holds that appellant's Sixth Amendment rights were not violated when C.M. was allowed to write portions of her testimony.  Further, this Court holds that the trial court did not err by failing to requiring C.M. to testify in accordance with the procedure outlined in Code § 18.2-67.9 because, by its own terms, the statute is inapplicable.

Affirmed.