**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 23-1192**

APPALACHIAN POWER COMPANY

Petitioner

BLUE RIDGE POWER AGENCY

Intervenor

v.

FEDERAL ENERGY REGULATORY COMMISSION,

Respondent.

On Petition for Review of an Order of the Federal Energy Regulatory Commission. (21-97-000)

Argued: September 26, 2024                    Decided: March 4, 2025

Before NIEMEYER, Circuit Judge, FLOYD, Senior Circuit Judge, and Kenneth D. BELL, United States District Judge for the Western District of North Carolina, sitting by designation.

Petition for review denied by unpublished per curiam opinion.

**ARGUED:** William Keyser, III, STEPTOE LLP, Washington, D.C., for Petitioner. Carol J. Banta, FEDERAL ENERGY REGULATORY COMMISSION, Washington, D.C., for Respondent. **ON BRIEF:** Karen Bruni, Megan McDowell, STEPTOE & JOHNSON

LLP, Washington, D.C.; Jessica A. Cano, Assistant General Counsel, AMERICAN ELECTRIC POWER SERVICE CORPORATION, Columbus, Ohio, for Petitioner. Matthew R. Christiansen, General Counsel, Robert H. Solomon, Solicitor, FEDERAL ENERGY REGULATORY COMMISSION, Washington, D.C., for Respondent.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This case concerns the interpretation of contracts between member utilities of the Blue Ridge Power Agency and Petitioner Appalachian Power Company (APCO). The Federal Energy Regulatory Commission (FERC) issued an order declaring that Blue Ridge members may install battery storage, energize the batteries with electricity purchased from APCO, and discharge that electricity during periods of peak demand without violating those agreements. APCO filed a petition for review challenging the Commission's decision. For the reasons we explain below, we deny the petition.

I.

Blue Ridge, appearing as intervenor aligned with FERC, is a non-profit entity that negotiates wholesale power purchase contracts on behalf of its members and monitors performance of those contracts. In 2017, APCO and three Blue Ridge members—Craig-Botetourt Electric Cooperative and the cities of Radford and Salem, Virginia (collectively, the "Members")—executed three respective agreements for "Full Requirements Electric Service." J.A. 352. Under these agreements, APCO sells to the Members all electricity required to meet their end-use customers' needs. In return, the Members purchase all the electricity they require from APCO and no one else. These three agreements contained substantially identical language and did not expressly authorize or forbid installation of battery storage technology (BST). This technology is aptly named: it consists of large-scale batteries capable of storing energy and discharging it to the electrical grid on demand. A fourth agreement for APCO to supply wholesale electricity to Virginia Polytechnic

3

Institute and State University (Virginia Tech) in Blacksburg, Virginia, contained provisions limiting BST installation. The Virginia Tech Agreement was executed in 2019. Relevant to the present appeal, each of these contracts also contained a choice of law clause providing for its interpretation under Virginia law.

In 2021, Blue Ridge informed APCO that its members intended to install BST to manage electrical loads at times of peak demand. These batteries would be energized using power purchased from APCO during off-peak times, when electricity costs less. The Members intended to then discharge electricity to meet customer demand during peak times, reducing the amount they must purchase from APCO at higher rates. APCO sent a response to Blue Ridge indicating it did not believe the agreements permitted the implementation of BST as contemplated by the Members.

Blue Ridge filed a petition seeking a declaratory judgment with the Commission shortly thereafter. *See* 18 C.F.R. § 385.207(a)(2) (permitting party to file petition for declaratory order); *see also* 5 U.S.C. § 554(e) (permitting FERC to issue "declaratory order to terminate a controversy or remove uncertainty"). Blue Ridge asked the Commission to declare that the agreements were not a barrier to installing BST and using it to manage electricity demand. APCO filed a response arguing the agreements foreclosed BST installation and its use in the manner the Members intended, and it asked the Commission to issue a judgment declaring accordingly.

On October 21, 2022, FERC issued an order finding the Members' agreements with APCO permitted installation of BST. Specifically, the Commission concluded that "[t]he use of battery storage does not affect the parties' obligations under the Agreements"

4

because the Members would have all their electricity needs met by APCO—including the power to energize the batteries—and the agreements contemplated that the quantity of electricity the Members purchased would vary from day to day. *Blue Ridge Power Agency*, 181 FERC ¶ 61,048 at PP 29–36 (2022). Further, the Commission noted that the agreements prohibited the installation of "generation resources," but reasoned that "battery storage cannot be defined as a generation resource" under the agreements "because a battery can only store Energy for later use, but cannot produce energy." *Id.* P 29 (citing *N. Carolina E. Mun. Power Agency* (*NCEMPA*), 172 FERC ¶ 61,249 at P 37 (2020) (concluding battery storage is not "inherently a form of generation" when charged with electricity from wholesale seller)). The Commission also found that installation and use of battery storage would not violate prohibitions on "newly constructed or purchased generation resources" or entering "new power purchase agreements." *Id.* P 36.

The Commission reached a different conclusion with respect to APCO's contract with Virginia Tech. It pointed to that agreement's limitation on construction of "New Generation" and the fact that the agreement expressly listed "battery storage" as a form of New Generation. *Id.* PP 37–38. Further, the Virginia Tech agreement precluded the use of BST for the purpose of demand reduction, and Blue Ridge intended to use it for that purpose. The Commission disagreed with Blue Ridge's arguments that the Virginia Tech agreements permitted installation of greater BST capacity than its express terms. Therefore, it concluded that Virginia Tech lacked "broad and uncapped" authority to install BST, and any installation of that technology would be subject to the capacity limitations and educational-purpose requirements contained in the contract. *Id.* P 44.

5

APCO timely appeals.  It primarily focuses its arguments on the Commission's interpretation of the agreements with the Members.  It argues that the agency decision should be vacated because the Commission failed to cite to Virginia law, would have reached a different result if it had, and substituted a policy judgment for a legal one. Finally, it contends the Commission erred in failing to ensure rates would be "just and reasonable" if the Members installed the proposed BST.  No party appeals the Commission's order with respect to the Virginia Tech agreement.

II.

An agency action, like the Commission's order, is reviewed under the familiar "arbitrary and capricious" standard.  *Sierra Club v. State Water Control Bd.*, 64 F.4th 187, 194 (4th Cir. 2023).  "Agency action is arbitrary and capricious if the agency relies on factors that Congress did not intend for it to consider, entirely ignores important aspects of the problem, explains its decision in a manner contrary to the evidence before it, or reaches a decision that is so implausible that it cannot be ascribed to a difference in view." *Friends of Buckingham v. State Air Pollution Control Bd.*, 947 F.3d 68, 80 (4th Cir. 2020) (quoting *Appalachian Voices v. State Water Control Bd.*, 912 F.3d 746, 753 (4th Cir. 2019)).  In other words, we "must ensure that the agency has examined the relevant data and articulated a satisfactory explanation for its action." *Mountain Valley Pipeline, LLC v. N. Carolina Dep't of Envtl. Quality*, 990 F.3d 818, 826 (4th Cir. 2021) (quoting *Defs. of Wildlife v. Dep't of the Interior*, 931 F.3d 339, 345 (4th Cir. 2019)).

6

This case also concerns the Commission's interpretation of a contract. "[I]nterpretation of [a] contract's language" is "a question of law clearly within the competence of courts," so our review is de novo. *Burgin v. Off. Personnel Mgmt.*, 120 F.3d 494, 497–98 (4th Cir. 1997) (citing 5 U.S.C. § 706).

## A.

We start with the interpretation of the agreements. The Commission determined the Members were not constrained from installing BST and discharging the batteries at times of peak customer demand. It began by emphasizing the agreements' exclusive focus on "generation" and its requirements that APCO serve as the exclusive electricity wholesaler for the Members to meet demand. *Blue Ridge*, 181 FERC ¶ 61,048 at P 28. The agreements expressly prohibited the Members from using "newly constructed or purchased generation resources"—in other words, the Members could not build their own power plants or purchase electricity from any entity besides APCO. *Id.* P 29.

The Commission determined that battery storage would not affect the parties' obligations under the agreements because batteries "can only store Energy for later use, but cannot produce Energy." *Id.* (citing *NCEMPA*, 172 FERC ¶ 61,249 at P 37). To further support its decision, FERC reasoned the agreements acknowledged electricity demand (and how much Members must purchase from APCO) would fluctuate from day to day. The agreements also did not fix minimum purchase or usage requirements. Therefore, the Commission found that while the agreements might change the timing of the Members'

7

use of electricity purchased from APCO, it would not change the fact the members were purchasing electricity exclusively from APCO as the contracts require. *Id.* PP 30–31.

The Commission also rejected APCO's argument that the Members were precluded from installing BST because the agreements did not expressly allow them to do so. Again, the Commission pointed out the agreements' language only requires the Members "to take their full requirements service from APCO and to pay a charge based on those requirements." *Id.* P 31. APCO also argued that the use of the batteries to reduce peak demand (also referred to in the industry as "peak shaving") was not expressly permitted in the agreements, and therefore prohibited. *Id.* P 32. But the Commission rejected that argument too, noting that the agreements did not proscribe that use of batteries, and the terms in fact contemplated fluctuating demand without limitation as to how the Members might effectuate that fluctuation. *Id.* P 33. Accordingly, the Commission determined BST installation would not violate the agreements.

The Commission cited cases in the federal courts discussing fundamental contract principles and constructive canons to support its order. *See id.* PP 31–33 & nn. 53, 57 (("a company is not 'entitled to be relieved of its improvident bargain'") (quoting *Fed. Power Comm'n v. Sierra Pac. Power Co.*, 350 U.S. 348, 355 (1956)) and ("the canon *expressio unius est exclusio alterius* [the expression of one thing is the exclusion of the other]" applies only where items are of an associated group or series) (quoting *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003))). APCO argues this was error because the agreements called for interpretation under Virginia law.

As we explain below, APCO does not demonstrate that Virginia law warrants a result different than the Commission's. Its order declaring BST installation would not violate the agreements was therefore not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). With that said, the Commission has authority to issue a declaratory order interpreting a contract between private parties (no party argues it lacks that authority here) and it is good practice, at a minimum, to honor choice of law clauses incorporated in an agreement. We now address APCO's arguments.

APCO contends that the agreements' plain terms foreclose BST installation. It cites the language stating APCO "shall sell and deliver" and the Members "shall exclusively receive and purchase Full Requirements Electric Service sufficient to serve Customer's Retail Load." Pet. Br. at 22. APCO then refers to provisions requiring it be "solely responsible for satisfying all requirements and paying all costs incurred or to be incurred to provide Full Requirements Service" and the Members "pay for such Full Requirements Electric Service[.]" *Id.* at 23. With this language in the background, APCO then asserts the compensation structure of the agreements—measuring peak monthly use and allocating costs accordingly—does not allow BST because using it to reduce the Members' peak electrical loads would "allow [the Members] to avoid paying for the full cost of the generation needed to serve them." *Id.* at 23–24.

It does not follow that the exclusive buyer-seller relationship and compensation terms proscribe the installation of battery technology here. APCO argues we cannot ignore that compensation is calculated by reference to peak demand and BST's intended use to

9

reduce peak demand because "a court should read the contract as a single document and give meaning to every clause where possible." *Id.* at 24 (citing *Berry v. Klinger*, 300 S.E.2d 792, 796 (Va. 1983)). In other words, APCO asserts that BST installation is inconsistent with the agreements' express intent for an exclusive supply-demand agreement. But the problem with that argument is that nothing about BST installation changes the fact that the Members will buy all the power needed to meet demand from APCO. Whether current flows directly to end-use customers or first makes a figurative "stop" in battery storage, it remains true that the Members purchase that electricity from APCO. Even if the Members strategically discharge the batteries to reduce load at the time load is measured for purposes of compensation, APCO is the original source of the electricity as the agreements require.

APCO also looks to the *expressio unius* canon to support its preferred readings of the agreements. Under Virginia law, that maxim "provides that the mention of a specific item . . . implies that other omitted items were not intended to be included[.]" *Blake Constr. Co./Poole & Kent v. Upper Occoquan Sewage Auth.*, 587 S.E.2d 711, 718 (Va. 2003) (quoting *Smith Mountain Lake Yacht Club, Inc. v. Ramaker*, 542 S.E.2d 392, 395 (Va. 2001)). The contracts require APCO to provide electric service "regardless of changes in Retail Load arising from daily fluctuations, increased or decreased usage, extreme weather and/or similar events." Pet. Br. at 28. APCO argues "systematic use of storage" to reduce electricity load is "not analogous" to any of the named items in this list and so it is prohibited. Pet. Br. at 28.

The *expressio unius* canon—which is nonbinding under Virginia law, *see Turner v. Commonwealth*, 758 S.E.2d 81, 86 (Va. Ct. App. 2014)—does not require or even point

10

towards a different result than the one the Commission reached. Nothing in the agreement suggests that this list comprehensively sets out the only permissible types of "fluctuations" in peak demand—indeed, the items listed are mostly expressed in already broad terms: "daily fluctuations, increased or decreased usage," and "similar events." Pet. Br. at 28. We therefore decline to vacate the Commission's decision based upon this nonbinding interpretive canon.

APCO also argues that the Commission improperly looked beyond the four corners of the agreements by referencing its *NCEMPA* decision, 172 FERC ¶ 61,249 (2020) (BST installation permitted in part because it is not "inherently" generation), and the fact that several Members' end-use customers participated in a demand response program, which has the effect of reducing electricity load at peak times, in its order. APCO contends the Court was "not at liberty to search for its meaning beyond the instrument itself." Pet. Br. at 32 (quoting *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999) (recognizing principle under Virginia law)).

We disagree that this requires us to vacate the Commission's order. APCO seems to suggest the Commission relied on its *NCEMPA* decision as controlling in this case, but that is not quite correct. For starters, the Commission focused extensively on the language in the agreements and the agreements' failure to define generation to include battery storage or forbid Member-induced changes in electricity demand by use of battery storage. *Blue Ridge*, 181 FERC ¶ 61,048 at PP 27–33. The Commission then zeroed in on its *NCEMPA* decision, acknowledged that that order did not "dictate" the outcome in this case, but concluded that it was "highly relevant" to its interpretation of the Members' agreements

11

with APCO. *Id.* PP 34–36. The Commission supported its order by pointing out the conclusion it reached aligned with a prior agency decision under similar facts, which was not error.

Nor was it erroneous to point out in a single sentence that some end-use customers participated in a demand response program without objection from APCO. After noting the agreements acknowledged electricity demand would fluctuate and placed no limitation on how the Members "can effectuate such variation," *id.* P33, the Commission cited these customers' participation as examples of similar conduct APCO had ostensibly permitted until this dispute arose. This "course of performance" justification makes up only a small part of the Commission's reasoning and does not require us to vacate its order.

APCO last argues that the Virginia Tech agreement—which expressly places limits upon BST installation and use—makes clear that the agreements with the Members prohibit BST installation and use, too. It now asks us, under the assumption the agreements are ambiguous as to whether BST installation is allowed, to find the Virginia Tech agreement shows the parties also intended the agreements at issue to prohibit BST.

The agreements between the Members and APCO were executed in 2017, and the Virginia Tech agreement was executed in 2019. Virginia law recognizes that a contract may be modified by a subsequent agreement or course of conduct. *See Smith Dev., Inc. v. Conway*, 896 S.E.2d 88, 97 (Va. Ct. App. 2024). But the party asserting modification must show the parties had a "mutual intention" to modify the agreement, and that intention must be shown by "clear, unequivocal and convincing evidence, direct or implied." *Id.* (quoting *Gov't Emps. Ins. Co. v. Hall*, 533 S.E.2d 615, 618 (Va. 2000)).

12

The Virginia Tech agreement's terms do not suggest any mutual intent to modify the Salem, Radford, and Craig-Botetourt agreements to forbid BST, let alone suggest the parties intended that meaning from the start. First, even though Blue Ridge negotiates on behalf of the Members, the agreements only bind APCO and each respective Member. Second, the terms of the agreements with the Members could have been different than the Virginia Tech agreement for any number of reasons; it makes sense that the provisions of a wholesale electricity purchase contract for a college campus might be different than one for a municipality. For example, the parties may seek to accommodate a significant drop in power demand during school breaks. It is also possible that APCO decided to make sure BST was expressly limited or prohibited in agreements after 2017 and sought to include the term's presence in the Virginia Tech agreement. At bottom, we are not persuaded that the Salem, Radford, or Craig-Botetourt agreements prohibit those entities from installing and using BST, whether looking within the four corners of their agreements with APCO or by reference to APCO's agreement to sell electricity to Virginia Tech.

We conclude by reiterating that honoring choice of law clauses in private contracts, when appropriate, is good agency practice so that parties may be afforded the benefit of their negotiated agreement. Our sister circuits have, for example, vacated FERC orders where the Commission did not adhere to the parties' selected outcome-determinative law. *See, e.g.*, *Louisville Gas & Elec. Co. v. FERC*, 988 F.3d 841 (6th Cir. 2021) (Commission's failure to honor choice of law clause left important issues unresolved following agency proceedings); *S. Cal. Edison Co. v. FERC*, 502 F.3d 176 (D.C. Cir. 2007) (Commission's failure to apply California law left unclear whether condition precedent was satisfied). In

13

this case, APCO has not persuaded us that the Commission's decision would have, or even could have, been different if it had looked to Virginia law instead. Nor has it shown that the Commission ignored relevant contract principles. We therefore decline to vacate the agency decision on the grounds it was contrary to law.

## B.

We now address APCO's argument that the Commission's decision must be vacated because it will result in unjust and unreasonable electricity rates, in violation of the Federal Power Act. *See* 16 U.S.C. § 824d(a) ("All rates . . . shall be just and reasonable"). APCO contends the Commission's decision contravenes a duty to prevent cost-shifting among customers, because the Members could discharge the batteries when APCO was otherwise providing the needed electricity from facilities it had already invested in.

We reject this argument. First, because the Commission was not addressing a newly filed contract, rate tariff, or claim that an existing contract or rate tariff had become unjust or unreasonable. Instead, the Commission was tasked with answering the question of whether the agreements permitted BST installation and use. We cannot say the Commission erred by deciding the rates issue was irrelevant to the matter before it. *See Mobil Oil Expl. & Producing Se. Inc. v. United Distrib. Cos.*, 498 U.S. 211, 230–31 (1991) (agencies "enjoy[] broad discretion" in determining how to handle "related, yet discrete, issues" and an agency "need not solve every problem before it in the same proceeding").

Further, the agreements say what they say. As we have explained, these contracts that the cities of Salem and Radford, Virginia and the Craig-Botetourt Electric Cooperative

14

executed with APCO do not prevent those entities from installing BST. These are contracts between private parties governing the terms of wholesale power purchases. The Commission did not err when it focused on the terms of the agreements before it and concluded BST installation as the Members intended would not violate those agreements and did not engage in speculation as to whether BST would result in unjust or unreasonable rates at some time in the future.

## III.

For the foregoing reasons, we deny APCO's petition for review.

*PETITION FOR REVIEW DENIED*